# UNITED STATES DISTRICT COURT

## For the

## Southern District of Florida

## West Palm Beach Division

FILED BY [signature] D.C.
SEP 01 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Hubert Alexandre Case No. 25-CV-81505-MCCABE

Plaintiff

Palm Beach Care Management

Defendant

## AMEND COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION

Plaintiff Hubert Alexandre appears pro se files this Amended Complaint against Defendant Palm Beach Care Management and alleges as follows:

## INTRODUCTION AND GROUND FOR THE AMENDMENT COMPLAINT

1- Plaintiff filed the original complaint on December 2, 2025. Plaintiff submits this Amended Complaint pursuant to Federal Rule of Civil procedure 15(a), to the extent amendment is permitted as a matter of course or has been authorized by the Court.

2-This Amended Complaint clarifies the factual allegations, separates the causes of action, and intended to avoid a shotgun pleading.

3-Plaintiff asserts claim under Title VIII of the Civil Right Act of 1964 based on sex, national origin. Plaintiff also assert a separate retaliation claim under Florida's Private Whistleblower Act, Fla. Stat. 448.101 448.105, based on Plaintiff's provision of information and testimony to the Florida Department of Children and families ("DCF") in an investigation concerning alleged patient neglect and abuse.

4-Plaintiff does not rely on his DCF testimony, standing alone, as protected activity under Title VII. Plaintiff reserves any Title VII retaliation theory only to the extent his EEOC charge encompasses opposition to or participation in a matter concerning discrimination prohibited by Title VII.

## I-NATURE OF THE ACTION

1- This is an action arises from Defendant's alleged discrimination against Plaintiff in the term and conditions of employment and termination because of sex and national origin, and from Defendant's alleged retaliation after Plaintiff provided information and testimony to DCF concerning alleged patient neglect and abuse.

2- Plaintiff seeks remedies available under applicable law, including back pay, compensatory damages to the extent permitted by law, punitive damages to the extent authorized, front pay where appropriate, equitable relief, interest, cost, and other appropriate relief.

## II- JURISDICTION AND VENUE

3- This Court has federal question jurisdiction pursuant to 28 U.S.C. 1331 and 42 U.S.C 2000e-5(f) (3).

4- Venue is proper in this Judicial district pursuant to 28 U.S.C 1391(b) because Defendant conduct substantial business in this district and the unlawful employment practices alleged herein occurred in this district.

5- Plaintiff invokes supplemental jurisdiction under 28 U.S.C. 1367 over related Florida Private Whistleblower Act Claim because it arises from the same employment relationship and overlapping facts.

6- Plaintiff has exhausted administrative remedies by timely filing a charge of discrimination with Equal Employment Opportunity Commission ("EEOC") on September 24, 2025 and receiving a notice of Right to Sue dated September 25, 2025. A true and correct copy of the notice of Right to sue is attached hereto as **Exhibit A**

7- Plaintiff received the Notice of right to sue on September 25, 2025. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## III- PARTIES

8- Plaintiff, Hubert Alexandre is a resident of Saint Lucie, County, Florida, and at all relevant time was an employee of Defendant.

9- Defendant, Palm Beach Care Management is a Healthcare employer with its principal place of business at 3648 Freshwater Dr. Jupiter, Florida 33477 in Palm

Beach County, Florida. On information presently available to Plaintiff; Defendant employed at least 15 employees during the relevant period and was employer within the meaning of Title VII. See **Exhibit B**

## IV- STATEMENT OF FACTS

### A. PLAINTIFF'S EMPLOYMENT

**10-** Plaintiff was hired and trained by Defendant as Certified Nurse Assistant (CNA) on April 3, 2025. See **Exhibit C page 17 through 21**

**11-** Plaintiff was paid bi-weekly at a rate of $ 29.16 per hour and generally worked twelve (12) hour shifts, four (4) days per week. See **Exhibit C page 22**

**12-** Defendant assigned Plaintiff to provide care to one of Defendant's clients. The employment document is currently under the Defendant control. See **Exhibit C page 16**

13- At all relevant times, Plaintiff performed his duties satisfactorily and met Defendant's legitimate performance expectations. Plaintiff received no written warnings, negative performance evaluations, or disciplinary actions prior to his termination on August 14, 2025. See **Exhibit D page 23 through 25**

### B. Discrimination Based on Sex

14- **Sex Discrimination** on or about June 14, 2025, Defendant representative/owner Tamela alldredge told Monique Mathe, in substance, that Plaintiff's was paid "too much as a male in a female-dominated position"

15- Defendant representative also made comment concerning masculinity in workplace including a statement that pants and short hair were "too masculine" for someone working for Defendant.(witness statement of Beth Braten (Care Manager)) See **Exhibit E page 26**

16- Between approximately June 2025 and August 2025. Mrs. Tamela Alldrege repeatedly referred to Plaintiff as "Lazy" Plaintiff alleges that female employees were not subject to comparable treatment. (witness statement of Monique Mathe (CNA))

17- **Sex-Based Stereotyping.** Plaintiff alleges that these statement reflected sex-based stereotypes concerning men working in a predominantly female occupation and were connected to the treatment of Plaintiff in the workplace.

18- Defendant terminated plaintiff on or about august 14, 2025, and Plaintiff alleges that he was replaced by a female employee.

19- Considered together, the sex-based statement, differential treatment, and termination support a reasonable inference that Plaintiff's sex was a motivating factor in Defendant's employment decisions.

20- Comments reflect unlawful sex-based stereotypes in violation of Price Waterhouse V. Hopkins, 490 U.S. 228 (1989), which held that sex-based stereotype constitute unlawful discrimination.

**C. Discrimination Based on National origin**

21- **National Origin discrimination.** Plaintiff is of Haitian origin, Plaintiff alleges that Defendant used the term "Caribbean Mafia" in referring to plaintiff and other employees of Caribbean origin.

22- On or about June 10, 2025 during a workplace conversation between Defendant representative Mrs. Tamela Alldredge referred to Plaintiff and other Caribbean employees as the "Caribbean Mafia." Plaintiff alleges that the statement was directed at or concerned employees because of their Caribbean national origin (witness statement of Heather Reaves) see **Exhibit F page 27**

23- Plaintiff also alleges that Defendant representative made disparaging remarks concerning Caribbean employee, including remarks concerning Esperanta and Beverly St. Valiere.(Witness statement by Beth braten and Heather Reaves). See **Exhibit G page 28**

24- **Refusal to Hire Qualified Black Male.** On or June 20, 2025, Plaintiff inquired about Defendant's decision not to hire a qualified Black male nurse for a care manager position. Plaintiff alleges that Heather Reaves stated, in substance, that Defendant was expecting a white female for the position.(Witness statement of Heather Reaves) See **Exhibit H page 29**

25- Plaintiff does not assert that the June 20, 2025 hiring decision itself is a separate claim on behalf of another applicant. Plaintiff alleges it as contextual evidence concerning workplace decision-making.

26- Plaintiff alleges that the national-origin remarks and related conduct contributed to his treatment and termination and support a reasonable of national-origin discrimination.

**D. DCF Investigation and Protected activity under Florida law**

27- **Engagement in Protected Activity**. On or about July 25, 2025 Plaintiff engaged in protected activity by participating as a witness in a Florida Department of Children and Family (DCF) elder-abuse, patient neglect, and abuse involving Defendant. See **Exhibit I page 30 through 32 and Exhibit B page 6 paragraph 3 before last sentence**

28- Plaintiff's conduct therefore falls within Fla. Stat. 448,102(2), which prohibits retaliatory personnel action because an employee provides information to or testifies before an appropriate governmental agency or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer. See **Exhibit I page 33 through 37**

**E. Retaliatory Conduct Following the DCF Activity**

29- Shortly after Plaintiff's DCF activity, the Defendant's treatment of Plaintiff by materially changed:

30- On or about July 28, 2025, Defendant assigned Plaintiff to care for a patient with Parkinson's disease despite concern identified by Plaintiff regarding outdoor walking. Plaintiff objected on patient-safety grounds and alleges that he was pressured to walk patient outside. (witness statement of Iris (therapist)) see **Exhibit J page 38**

31- On or about July 29, 2025, Defendant required Plaintiff to create care plans for patient, that Plaintiff alleges were unnecessary or duplicative and outside the ordinary responsibilities of a CNA Plaintiff alleges that comparable female CNAs were not subjected to the requirement. See **Exhibit K page 39 through 40 and Exhibit B page 6 paragraph 1 second sentence**

**32-** Plaintiff further alleges that Defendant withheld or delayed paycheck beyond the scheduled payment date. Plaintiff will establish the exact payment dates and chronology through payroll records in discovery. See **Exhibit L page 41 and 42**

33- Plaintiff alleges Defendant increased scrutiny and hostility toward him, beginning shortly after the DCF activity, including criticizing his work and adverse treatment concerning care plan. See **Exhibit M page 43**

34- On or about August 14, 2025, approximately twenty days after Plaintiff's DCF participation, Defendant terminating Plaintiff employment. See **Exhibit N page 44 through 48**

35- Plaintiff alleges that the close temporal proximity, the treatment immediacy following the DCF activity, the alleged adverse assignment, the alleged paycheck delay, and the termination support a reasonable inference of retaliatory motive. See **Exhibit O page 49 and 50**

36- In Hicks V. City of Tuscaloosa, 870 F. 3d 1253 (11th Cir. 2017) the eleventh circuit held that discriminatory comments plus replacement by a member of the opposite sex support an inference of sex discrimination. Here, Defendant (a) made sexist comments, (b) terminated Plaintiff, and (c) replaced him with a female employee.

**37-** Despite Plaintiff's attempt to resolve the issue without the Court intervention. Defendant failed to reinstate Plaintiff. See **Exhibit P page 51**

38- . In Goldsmith V. Bagby Elevator, 513 F. 3d 1261 (11th Cir. 2008) the Eleventh Circuit held that termination shortly after protected activity constitute classic retaliation.

39- Plaintiff further alleges that Defendant knew of plaintiff's participation in the DCF investigation before taking the adverse action described above.

**F. DAMEGES AND MILIGATION**

40- As a result of Defendant's alleged discriminatory and retaliatory conduct, Plaintiff last wages beginning on or about August 14, 2025

41- Plaintiff presently estimates his lost wages at approximately $70,000, but the precise amount will be established through payroll and mitigation.

42- Plaintiff alleges emotional distress, humiliation, and other non-economic harm cause by Defendant's conduct. Plaintiff seeks compensatory damages only to the extent authorized by applicable law and subject to any statutory limitations.

43- Plaintiff has attempted to mitigate his economic damages by seeking employment and/or pursuing available employment opportunities.

44- Plaintiff seeks front pay only to the extent reinstatement is not feasible and in amount established by the evidence.

**V- COUNT I TITLE VII SEX DISCRIMINATION**

45- Plaintiff realleges and incorporates by reference paragraph 1 through 20 as though fully set forth herein.

46- Title VII prohibits an employer from discriminating against and individual with respect to compensation, terms, conditions, or privileges of employment because of sex. 42 U.S.C. 2000e-2 (a)(1)

47- Defendant subject Plaintiff to adverse employment actions, including differential treatment and termination.

48- Defendant representative expressly connected Plaintiff's compensation to his status as a male in a female-dominated position and made additional comment concerning masculinity.

49- Plaintiff further alleges that Defendant treated him differently from female employee and ultimately terminated him and replaced him with a female employee.

50- These facts, taken together, plausibly support an inference that sex was a motivating factor in Defendant's employment decisions.

51- As a direct proximate result, Plaintiff suffered lost wages and other recoverable damages.

**VI- COUNT II TITLE VII NATIONAL ORIGIN DISCRIMINATION**

52- Plaintiff realleges paragraph 1 through 13 and 21 through 26 as though full set forth herein.

53- Title VII prohibits discrimination in employment because of national origin 42 U.S.C. 2000e-2(a)(1).

54- Plaintiff alleges that Defendant personnel referred to Plaintiff and other Caribbean employees as the "Caribbean Mafia" and made disparaging remarks concerning Caribbean employees.

55- Plaintiff alleges that these comments occurred in the workplace and were made by management personnel during the period of Plaintiff's employment.

56- Plaintiff further alleges the national-origin remarks were part of the circumstance surrounding his hid differential treatment and termination and support a reasonable inference that national origin was motivating factor in Defendant's decisions.

57- Plaintiff suffered economic and non-economic harm as a result of Defendant's alleged national origin.

**VII- COUNT III FLORIDA PRIVATE WHISTLEBLOWER ACT**

58- Plaintiff realleges paragraph 1 through 13 and 27 through 35 as though full set forth herein.

59- The Florida Private Whistleblower Act prohibits a private employer from taking retaliatory personnel action because an employee provides information to or testifies before an appropriate governmental agency or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer. Fla. Stat. 448.102(2).

60- Defendant is a private employer with the meaning of the Act if, as plaintiff alleges, it employed ten or more persons during the relevant period.

61- The Plaintiff engaged in protected activity on or about July 25, 2025 by proving information in the DCF investigation.

62- Defendant knew or became aware of Plaintiff participation in the DCF investigation.

63- After the protected activity, Defendant allegedly subject Plaintiff to adverse personnel action, including materially adverse work assignments. Increased hostility and scrutiny, and alleged delay or withholding of wages, and termination.

64- Termination occurred approximately twenty days after Plaintiff's DCF participation. The timing, together with the alleged change in treatment immediately following the protected activity. Support a reasonable inference of causation at the pleading stage.

65- Plaintiff alleges that Defendant's retaliatory conduct; lost of wages and other compensatory damages.

66- Plaintiff seeks the relief authorized by Fla. Stat. 448.103 including compensation for lost wages and other remuneration, other compensatory damages allowable at law, and equitable relief where appropriate.

**VIII- RETALIATION RESERVED**

67- Plaintiff does not plead the DCF investigation itself as Title VII-protected activity. Plaintiff reserves any Title VII retaliation theory only to the extent the EEOC charge and its factual allegations encompass Plaintiff's opposition to, or participation in a proceeding concerning, discrimination prohibited by Title VII.

68- If the EEOC charge does not encompass such protected activity, Plaintiff does not seek relief under Title VII for the DCF-based retaliation and relies instead on Count III under Florida law.

**IX- PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against the Defendant and:

A. Declare, to the extent appropriate, that Defendant conduct violated title VII of the Civil Rights Act of 1964/or the Florida Private Whistleblower Act.

B. Award compensatory damages for emotional distress and other non-economic injuries to the extent authorized by applicable law.

C. Award Plaintiff back pay in an amount proven at trial;

D. Award Plaintiff punitive damages under Title VII to the extent Plaintiff proves the requirement of 42 U.S.C. 1981(a) and subject to applicable statutory limitation

E. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

F. Award Plaintiff front pay where reinstatement is not feasible and where supported by the evidence.

G. Exercise supplemental jurisdiction over the Florida Private Whistleblower Act claim; and

H. Grant such other and further relief as this Court deems just and proper.

**X- JURY DEMAND**

69- Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

I hereby certify, I served a true and correct copy of the foregoing Amended Complaint upon Defendant party Palm Beach Care Management by the method authorized by the Federal Rules of Civil Procedure, the local Rules of the Southern District of Florida, and any applicable order of the Court. I declare under penalty of perjury that foregoing is true and correct.

Date of signing: 9/1/26

Name: Palm Beach Care Management

Spire Law, PLLC

400 Fontana Circle,

Suite 105

Oviedo, Florida 32765

monica@spirelawfirm.com

Name: Hubert Alexandre

Address: 5197 NW Wisk Fern Circle

Port saint Lucie, Florida 34986

Telephone: (772)924-5801

E-mail Address: tonyalex668@yahoo.com

Signature of Plaintiff [signature]

Printed Name of Plaintiff Hubert Alexandre